BUCHALTER
A Professional Corporation
C. DANA HOBART, ESQ. (CA SBN: 125139) (*Admitted Pro Hac Vice*)
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017
Telephone: 213.891.0700
Fax: 213.896.0400
Email: dhobart@buchalter.com

HEJMANOWSKI & McCREA
PAUL HEJMANOWSKI, ESQ. (NV SBN: 94)
CHARLES MCCREA, ESQ. (NV SBN: 104)
520 South Fourth Street, Suite 320
Las Vegas, NV 89101
Telephone: 702.834.8777
Fax: 702.834.5262
Email: prh@hmlawlv.com
        chm@hmlawlv.com

Attorneys for Plaintiffs,
AERODYNAMICS INCORPORATED and
ADI HOLDINGS COMPANY, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| AERODYNAMICS INCORPORATED, a Michigan corporation; ADI HOLDINGS COMPANY INC., a Georgia corporation, | Case No. 2:15-cv-1344-JAD-PAL |
| Plaintiffs, | **JOINT PRETRIAL ORDER** |
| vs. | |
| CAESARS ENTERTAINMENT OPERATING COMPANY, INC., a Delaware corporation; STEVEN MARKHOFF, an individual; INTERNATIONAL MANAGEMENT SOLUTIONS LLC, a Delaware corporation; VIA AIRLINES, INC., a Colorado corporation; VIA AIR, LLC, a Delaware corporation; and AMOS VIZER, an individual, | |
| Defendants. | |

# I.     NATURE OF THE ACTION

## A.     Plaintiffs' Statement of the Case

Plaintiffs Aerodynamics Incorporated ("Aerodynamics") and ADI Holdings, Inc. ("Holdings") (together with Aerodynamics Incorporated, "ADI") operated a certificated jet aircraft carrier.  ADI alleges that Defendants Caesars Entertainment Operating Company, Inc. ("Caesars"), Steven Markhoff, International Management Solutions, LLC, ("IMS") (together with Mr. Markhoff, "Markhoff Defendants"), Via Airlines, Inc., formerly known as Charter Air Transport, Inc. (together, "Via Airlines"), Via Air, LLC, formerly known as Mauiva, LLC (together, "Via Air"), and Amos Vizer, also known as Ami Vizer (collectively with Via Airlines and Via Air, "Via Entities") misappropriated ADI's trade secrets and other confidential information to obtain Federal Aviation Administration ("FAA") certification to operate a 50-seat jet aircraft for the benefit of Caesars, causing Plaintiffs to lose millions of dollars and obtain an air charter contract (the "Caesars contract") that otherwise would have gone to ADI.  ADI further alleges that the Defendants breached other obligations owing to ADI in connection with the parties' prospective business relationship.  ADI alleges that it allowed Caesars and its executive Mr. Markhoff to have unfettered access to ADI's trade secret jet aircraft operations while ADI and Caesars negotiated the Caesars contract.  At the last minute, Mr. Markhoff, on behalf of Caesars, cancelled the impending contract and gave it to ADI's competitor, Via Airlines, Inc.  However, neither Via Airlines nor its related companies (the Vizer Entities) qualified for the Caesars contract because the Vizer Entities were not certificated by the FAA under 14 CFR Part 121 to operate a 50-seat jet aircraft, had never operated a jet aircraft charter program, and did not (until misappropriating ADI's trade secrets) own or lease any qualifying regional jet aircraft.  Caesars contends that it determined that Plaintiffs did not qualify for providing air charter services to Caesars, and that it did not misappropriate and of Plaintiffs' trade secrets or confidential information.  The other Defendants similarly contend that they did not misappropriate Plaintiffs' trade secret and confidential information.

/ /

/ /

**B.** **Defendants' Statement of the Case**

Caesars Entertainment Operating Company, Inc. ("Caesars") is a Nevada gaming licensee and a publicly-traded company that owns and operates various hotels and casinos across the United States.  Caesars issued a Request for Proposal (the "RFP") requesting bids for air chartering services to bring patrons to/from its properties across the United States.  Plaintiffs Aerodynamics Incorporated ("Aerodynamics") and ADI Holdings, Inc. ("Holdings") (together with Aerodynamics Incorporated, "ADI" or "Plaintiffs") operated a certificated jet aircraft carrier, and was interested in competing for the contract to provide charter services to Caesars.  During the diligence associated with a potential contract for the provision of air charter services, Caesars, a gaming licensee was simultaneously conducting a suitability investigation, as it does with all potential vendors.  As a result of the investigation, Caesars determined that Aerodynamics was unsuitable to do business with Caesars and it could not do business with Aerodynamics.  Specifically, during the course of a suitability investigation, Caesars discovered that Scott Beale, ADI's then-owner and CEO, was found liable for fraud, a fact which Aerodynamics did not disclose to Caesars.  Additionally, around the same time, the Department of Transportation ("DOT") issued an Order to Show Cause against ADI.  As a result, Caesars could not proceed with any potential relationship with ADI.  Caesars thereafter terminated its contract discussions with Aerodynamics and subsequently entered into a contract with an ADI competitor, Via Airlines, Inc., for the charter service.

As a result of not being awarded the charter contract, ADI filed suit, alleging that Defendants Caesars, Steven Markhoff (a former Caesars executive), International Management Solutions, LLC, ("IMS") (together with Mr. Markhoff, "Markhoff Defendants"), Via Airlines, Inc., formerly known as Charter Air Transport, Inc. (together, "Via Airlines"), Via Air, LLC, formerly known as Mauiva, LLC (together, "Via Air"), and Amos Vizer, also known as Ami Vizer (collectively with Via Airlines and Via Air, "Vizer Entities") misappropriated ADI's trade secrets and other confidential information to obtain Federal Aviation Administration ("FAA") certification to operate 50-seat jet aircraft for the benefit of Caesars, causing Plaintiffs to lose millions of dollars. ADI also alleges that the Defendants breached other obligations owing to ADI

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

in connection with the parties' prospective business relationship. ADI alleges that it allowed Caesars and its executive Mr. Markhoff unfettered access to ADI's trade secret jet aircraft operations while ADI and Caesars were negotiating a contract.   ADI alleges that, at the last minute, Mr. Markhoff, on behalf of Caesars, cancelled the impending contract and gave it to Via Airlines, Inc., who ADI alleges is not qualified for the Caesars contract.

Caesars maintains that it did not misappropriate any of Plaintiffs' trade secrets or confidential information or breach any agreement with Aerodynamics. The Markhoff Defendants similarly contend that they did not misappropriate any trade secrets or confidential information purportedly belonging to ADI, breach any agreement with ADI, or breach any other obligation purportedly owed to ADI. Similarly, the Vizer Entities contend that they did not misappropriate any of Plaintiffs' trade secrets or confidential/proprietary information and they did not use or otherwise rely on any of Plaintiffs' information in obtaining, negotiating or performing under the Caesars' contract.  Moreover, the Vizer Entities submit that they were not unjustly enriched by the award of the Caesars' contract and they have not caused Plaintiffs' damages, if any.

## II.   STATEMENT OF JURISDICTION

This Court has jurisdiction on the basis of diversity of citizenship, pursuant to 28 U.S.C. § 1332.  At all times relevant herein, Aerodynamics is a Michigan corporation.  The stock of Aerodynamics is owned by Carlsbad-Palomar Airlines whose principal place of business is in Carlsbad, CA.  Holdings is a Georgia corporation with operations in Kennesaw, Georgia.  Caesars is a Delaware corporation with its principal place of business in Clark County, Nevada.  Mr. Markhoff is an individual residing in, and a resident of, Clark County, Nevada. IMS is a Delaware limited liability company with its principal place of business in Clark County, Nevada.  Via Airlines, Inc., is a Delaware corporation with its principal place of business in Maitland, Florida.  Via Air, LLC is a Delaware corporation with its principal place of business in Maitland, Florida.  Mr. Markhoff is an individual residing in, and a resident of, Orange County, Florida.

Further, the amount in controversy exceeds $75,000, exclusive of interest and costs.

**III.   ADMITTED FACTS**

The parties have not been able to agree on admitted facts.  The Parties will continue to meet and confer in an attempt to reach agreement and will supplement this Joint Pretrial Order as they do so.  Accordingly, the Parties separately set forth their Issues of Fact below.

**IV.   UNCONTESTED FACTS**

The Parties have not been able to agree on uncontested facts.  The Parties will continue to meet and confer in an attempt to reach agreement and will supplement this Joint Pretrial Order as they do so.  Accordingly, the Parties separately set forth their Issues of Fact below.

**V.   ISSUES OF FACT**

**A.   ADI's Statement Of Facts[1]**

At all times material herein, ADI operated charter flights using Embraer ERJ-145 regional jets.

The Federal Aviation Administration ("FAA") uses the air carrier certification process to ensure that an applicant is able to design, document, implement, and audit safety critical processes that comply with regulations and safety standards and manage hazard-related risks.

As part of its Part 121 certification ADI had to create and submit to the FAA a substantial amount of documentation including a complete set of company manuals and programs comprised of more than twenty separate manuals and totaling approximately 10,000 pages.  ADI's manuals were approved by the FAA.

As of late 2014 and early 2015, ADI had developed and maintained historical financial information, including its historical financial statements, pro formas, pricing models, budgets, and business plans which detail every component of ADI's operations.

ADI also developed a detailed financial model containing all of ADI's proprietary information about ADI's projected profit and losses on all of its routes, contracts, and customers.

---

[1] Plaintiff reserves its right to modify the below statement of facts as necessary or appropriate as the case proceeds, including without limitation, based upon the Court's disposition of any motions in limine.

ADI's trade secrets also include its financial information, developed by ADI, which includes its historical financial statements, pro formas, pricing models, budgets, and business plans which detail every component of ADI's operations.

This model contains projected income on the Caesars contract including routes, crew compensation, hourly aircraft operational costs proven over years, maintenance reserves, pilot training costs, aircraft lease rates, and many other categories of data that ADI never shares outside of the company.

The Caesars component of the financial model alone was costly to develop, took six weeks to create, and involved highly skilled and knowledgeable aviation industry experts with a vast knowledge of operating Embraer ERJ-145 50-seat regional jets.

ADI also maintains as its trade secrets the lease agreements with its two aircraft lessors, Republic Holdings and Cymus Holdings.  These agreements identify, among other things, specific leased aircraft, lease rates, utilization rates, maintenance reserves, return condition requirements, operational support benefits, and insurance specifications. The terms are heavily negotiated, are closely guarded, and give ADI a competitive advantage in the air charter industry.

Another important aspect of ADI's trade secrets are its confidential agreements with its vendors which also give it a competitive edge over its competition. For example, ADI has negotiated a "pool parts agreement" with Embraer, the manufacturer of the ERJ-145 jets.  A pool parts agreement is a support contract with Embraer whereby ADI is given access to a worldwide logistical inventory of airframe and other parts, in addition to engineering and other support functions, in exchange for payment to Embraer based on hours of aircraft operation.

The Embraer Pool Parts Agreement was negotiated to closely match that of ADI's strategic partner and lessor, Republic Holdings ("Republic"), which operates over 250 Embraer aircraft.  ADI invested over a year developing its relationship with Republic and several months negotiating with Embraer.  The resulting Embraer Pool Parts Agreement is unique in the industry because it gave ADI the best operational cost structure for a charter company, the best logistical support, and the most competitive dispatch reliability and on-time performance in the industry.

1  Most importantly the program provided ADI with a best in class operational cost per hour which

2  is guaranteed by Embraer.

3      Having a copy of the Embraer-ADI Pool Parts Agreement would give an enormous

4  advantage to ADI's competitors.  The agreement would allow a competitor to know the terms and

5  conditions that Embraer was willing to accept and, therefore, provide it with negotiating power at

6  ADI's expense.  That superior bargaining power would then allow a competitor to undercut

7  ADI's prices and steal ADI's market share.  The competitor would also save hundreds of

8  thousands of dollars annually per aircraft without making a similar investment of time and money

9  as did ADI.

10      Similarly, ADI heavily negotiated a service agreement with the manufacturer of its jet

11  engines, Rolls Royce.  Through a "flow down agreement" with ADI's aircraft lessor, Republic,

12  Rolls Royce offered ADI airline rates with consistent airline service and benefits at a rate 50%

13  lower than would be typical for a low utilization charter operation.  This program saved ADI

14  hundreds of thousands of dollars annually per aircraft, equating to over a million dollars in annual

15  savings over a fleet of five aircraft, and would never be shared with a competitor.

16      Furthermore, ADI has developed a rich customer base over its years of operations that is

17  known only inside the company, which included not only the names of ADI's customers, but also

18  its customer contacts, historical contractual and financial arrangements, and quotation and pricing

19  matrices which are used in negotiations and competitive bidding.  Together this constitutes a

20  secret formula pricing model that provides ADI a competitive advantage in the industry.

21      None of the foregoing information is available to the public and would be particularly

22  valuable to a competitor or to a company hoping to enter the Embraer ERJ-145 regional jet

23  business.

24      At all times relevant, there were only three US-based Embraer regional jet charter

25  operators and only ADI operated charter service fulltime under a Part 121 certification.

26  Therefore, not only was ADI's operation unique, it was highly specialized and one-of-a-kind.

27

28

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

In fall 2014, Caesars issued a request for proposal seeking bidders to provide charter jet service to bring Caesars patrons to and from Caesars' properties across the United States over a period of three years.

Among other provisions, Caesars' request for proposal required that a potential bidder be able to provide at least three and possibly four Embraer ERJ-145 or Canadair CRJ-200 50-seat regional jets.

On October 1, 2014, Steven Markhoff, Vice President of Caesars' ESS Travel Management division, contacted Mr. Beale and invited ADI to bid for Caesars' Master Air Transportation Charter Agreement (hereafter, the "Charter Agreement").

Caesars' request for proposal, provided to ADI on or before October 22, 2014, also required that a potential bidder be able to provide at least three and possibly four Embraer ERJ-145 or Canadair CRJ-200 regional jets.

Because the bidding and contracting process would require ADI to share its trade secrets and confidential information with Caesars, Caesars drafted and executed a non-disclosure agreement ("Caesars NDA") that prohibited Caesars and its "officers, partners, directors, employees, accountants, lawyers, advisors and other representatives (collectively 'Related Persons')" from using ADI's confidential information for any purpose other than evaluating ADI's ability to operate the Charter Agreement.

The Caesars NDA provided that Caesars was "in a relationship of confidence with respect to the Confidential Information disclosed by ADI" and made Caesars strictly "responsible for any acts or omissions of its Related Persons that result in breach of" the Caesars NDA.

On or about October 9, 2014, Mr. Markhoff reviewed ADI's operational costs and confidential agreements including the Embraer Pool Parts Agreement, the Rolls Royce engine contracts, and ADI's maintenance flow down agreements from its aircraft lessors, Republic and Cymus.

On or about October 9, 2014, ADI provided Mr. Markhoff with a verification of costs and operating results from its business, including insurance matters, ADI's proprietary maintenance program, and a cost analysis presentation.

On or about October 9, 2014, at Mr. Markhoff's request, ADI provided him with a digital thumb drive containing ADI's FAA-approved manuals and operations specifications consisting of twenty manuals with approximately 10,000 pages of material.

Caesars and ADI negotiated the terms of the Caesars contract and the parties reached a "final" agreement on January 21, 2015.  In November 2014, Mr. Markhoff wrote to Mr. Beale stating that once "we get the draft contract agreed to, I need to get our legal department to bless it and take it to our executive committee for final approval – this will be a perfunctory step."  On December 27, 2014, Mr. Markhoff wrote to Mr. Beale stating that "[w]e are fine with the latest changes [to the draft agreement and] . . . am sending to our legal department for final review."  The final charter contract, including all its material terms, was agreed between ADI and Caesars by January 21, 2015.

January 22, 2015, the Department of Transportation ("DOT") issued an order to show cause (the "OSC") proposing to deny ADI's application for interstate scheduled passenger authority.  Mr. Beale emailed Mr. Markhoff a copy of the OSC that same day.  Nothing in the OSC, nor any actions by the DOT, ever disqualified ADI from operating the charter contract was not viewed by Caesars as an impediment to entering into the charter contract with ADI.  Mr. Markhoff himself wrote that the OSC "does not affect [ADI's] ability to fly our charters."

As a result of the actions ADI implemented, Mr. Beale no longer had "any involvement in the governance or management of the companies" and no longer held "any management, employee, sales agent, consultant or board position with the companies." On February 13, 2015, the DOT stated that "based on the information provided by ADI, it is the Department's intention to defer further action within the timeframe ADI has requested."  At no time did the DOT ever suspend or revoke any of ADI's certificates and took no adverse action that impeded ADI's ability to operate the charter contract.

As a result of the OSC, Caesars requested to make a further, more detailed review of ADI's trade secret and confidential information.  On January 26, 2015, at Caesars' request, ADI provided Caesars with access to a digital, password-protected library that Mr. Markhoff accessed over the internet, which allowed Mr. Markhoff, and whomever Mr. Markhoff shared the password

with, access to ADI's historical and current financial statements and pro formas, operations manuals, policy manuals, specific operating data, business plan and budgets for the Caesars contract and other ADI agreements, vendor contracts, leases, service agreements, customer lists, and customer contacts.

On January 27, 2015, Mr. Markhoff confirmed to Mr. Beale that he had downloaded all of ADI's documents from the digital document library, at or around which time Mr. Beale also provided Mr. Markhoff with the highly detailed financial model described above.

On January 27, 2015 – again while still under the Caesars' NDA – Mr. Markhoff and Matthew Levin, a Caesars employee who was skilled in finance, data analysis, and financial modeling of potential acquisitions, arrived at ADI's Ohio facility and, as Mr. Markhoff had requested, ADI gave them complete access to all of ADI's confidential and proprietary information including business plans, contracts, leases, pricing models, customer lists, all financial records, all customer lists, contact information for ADI's lessors, proprietary and special agreements with key suppliers, and profit margin information on the business.  The visit to ADI's facility lasted from Tuesday, January 27, 2015, to Friday, January 30, 2015.

During these meetings, ADI also shared with Caesars a detailed Excel financial model containing all of ADI's proprietary projections and data regarding how it would operate the charter agreement.  This model included highly proprietary information about ADI's projected profit and losses on all of its routes in general and, with respect to the Caesars contract in particular, contained projected income on the Caesars routes, crew compensation, maintenance reserves, pilot training costs, aircraft lease rates, and many other categories of data that ADI never shares outside of the company.

Using ADI's trade secret confidential information disclosed during these January 27-30, 2015 meetings, Mr. Levin and Mr. Markhoff assembled a model for the purpose of Caesars' evaluation of ADI as a vendor.  Mr. Levin used this model for the purpose of doing due diligence on ADI on behalf of Caesars.

On February 11, 2015, Mr. Markhoff misrepresented to ADI that he needed an independent forensic accountant identified only as "Marina" to visit ADI's facilities and conduct

1    a further analysis of ADI's trade secrets.  ADI did not know at the time that Marina was actually

2    Marina Morgan, working for Ami Vizer as the Financial Director of Via Air.

3         In advance of Ms. Morgan's arrival, Mr. Beale asked Mr. Markhoff who she was and with

4    whom she was affiliated.  Mr. Markhoff wrote to Mr. Beale falsely stating that Ms. Morgan "is an

5    independent consultant" and forwarded his response to Mr. Vizer.  Mr. Markhoff also wrote to

6    Mr. Vizer reporting that he had told Mr. Beale (falsely) that Ms. Morgan "is contracted from

7    International Management Solutions."

8         In truth, at the time Ms. Morgan visited ADI, she was an employee of Via Air, LLC.  Mr.

9    Vizer paid for Ms. Morgan's air fare and hotel for the trip to ADI.  Nor was there any consulting

10   agreement between Ms. Morgan and Mr. Markhoff or his company, IMS.   Mr. Markhoff never

11   disclosed to Mr. Beale that Ms. Morgan was a Via employee.    The fact that both Mr. Markhoff

12   and Mr. Vizer knew that they were sending Ms. Morgan to ADI under false and fraudulent

13   pretenses was made clear in an email exchange in which Mr. Vizer wrote: "We are going to have

14   an employee of mine in [Mr. Beale's] office.  We don't want to do it without an NDA that

15   protects us all as it can get dirty very quickly."

16        Mr. Beale instructed Ms. Morgan upon her arrival on February 12, 2015, that she was not

17   to remove any documents, electronically or physically, from ADI's facilities nor have access to

18   ADI's customer information.  Despite these ground rules, on multiple occasions, Ms. Morgan was

19   caught taking photographs and attempting to make photocopies of ADI's documents. When she

20   was prohibited from taking these actions, she was directed by Mr. Markhoff  to leave the

21   premises.

22        On February 7, 2015, Mr. Markhoff, on behalf of IMS, proposed to enter into a letter of

23   intent with ADI's parent company, ADI Holdings, to purchase ADI Holdings (the "IMS LOI").

24   The IMS LOI included a nondisclosure agreement.  The Caesars NDA also remained in effect as

25   it was unclear what Caesars role was in the potential acquisition.

26        Only hours after Marina left ADI, on February 13, 2015, Mr. Markhoff sent Mr. Beale an

27   email on behalf of IMS "terminating our diligence and our interest in acquiring the company."

28

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

The following Monday, February 16, 2015, now on behalf of Caesars, Mr. Markhoff wrote to Mr. Richardson stating that "Caesars has elected to no longer pursue a contract with ADI to operate aircraft for the Caesars air network."

Subsequently, Caesars and Via Airlines entered into a long-term agreement under which Via Airlines would provide flights on behalf of Caesars through a fleet of owned and leased Embraer jets.

At the time of the agreement, Via Airlines was only certificated under Part 135, not Part 121, and thus the Vizer Entities only had authority to fly charters using aircraft carrying 30 or fewer passengers.

Throughout its entire history, Via Airlines has only operated propeller-driven aircraft with 30-seat capacity and has never operated 50-seat Embraer ERJ-145 regional jets.

Neither Mr. Vizer nor Mr. Markhoff has any substantive experience operating Embraer 145 aircraft by the time of the agreement between Caesars and Via Airlines.

On February 10, 2015, Mr. Markhoff and Mr. Levin met with executives at Republic. Unbeknownst to anyone at ADI, Mr. Vizer was also present. In violation of their obligations under the Caesars NDA, Mr. Levin and Mr. Markhoff displayed ADI's model and discussed it and ADI's financial condition in detail at the Republic meeting. The disclosure to Mr. Markhoff and Via of ADI's confidential information provided the clarity of the business expectation that Via would have undertaken the Caesars' contract and enabled him to both build the case for or conceive the development with Via, as well as to help Via to overcome uncertainty that they would be inclined to undertake the risks associated with the venture. The wrongful disclosure and use of ADI's model (among other confidential information) caused harm to Plaintiffs because, but for disclosure of the model and its details, Via had not bid for, and would not undertake, the charter agreement and the associated risks of obtaining Part 121 certification.

Until the disclosure of this information to Mr. Vizer by Mr. Markhoff, Via had made no effort to bid on the Caesars' contract, had not undertaken the expense of becoming a 121 certificated operator, and acquired no jet aircraft. Only days after receiving this information in breach of the Caesars' NDA, Mr. Vizer and Mr. Markhoff went from purportedly acquiring ADI

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

and operating the Caesars contract to directing the Caesars contract to Via and operating it for themselves.

During the same meeting with Republic, Mr. Markhoff disparaged ADI by using the results of the confidential information he had been given by ADI, disclosed to Republic all of his findings regarding ADI, its contracts, its financial status, and falsely said that "ADI is bankrupt."

On or about February 18, 2015, Mr. Markhoff, made a second trip to Republic.  At this meeting, Mr. Markhoff told the participants that "he was working for Caesars."  In the presence of Mr. Vizer, aggressively disparaged ADI with the intent to put ADI out of business.

Following the meetings with Republic, Republic, through its leasing agent Chris Beer, negotiated with Mr. Markhoff on behalf of the Vizer Entities to lease nine Embraer ERJ-145 jets to the Vizer Entities.  After Republic sent Mr. Markhoff a term sheet, Mr. Markhoff sent redline comments back which were the same key financial terms of ADI's confidential agreements with Republic.

Mr. Markhoff then contacted ADI's other aircraft lessor, Cymus, requesting a term sheet to lease the two aircraft that Cymus was already leasing to ADI.  Mr. Markhoff could only have known the terms of the leases, their default provisions, and the specific aircraft involved through misappropriating ADI's Cymus agreements.  Additionally, only through his access to ADI's trade secrets could Mr. Markhoff have known that ADI was behind on its lease payments to Cymus and was negotiating an agreement to repay Cymus.  Mr. Markhoff used this information in an attempt to convince Cymus to terminate its leases with ADI and, thereafter, lease the aircraft to the Vizer Entities.

PASS Charters arranges with direct air carriers like ADI to provide flights for PASS customers such as university and professional sports teams.  ADI and PASS had entered into a one year charter/lease agreement on September 19, 2014 under which ADI leased aircraft (including crew, maintenance, and insurance) to PASS for the operation by ADI of flights to transport PASS's customers through on demand charter flights.

During a portion of the February 18, 2015 meeting that Mr. Markhoff and Mr. Vizer attended at Republic, PASS's president, Sue Pavlak, participated by telephone.  Mr. Markhoff

said that the Vizer Entities would support all PASS's requirements for regional jet aircraft and replace ADI and the agreement between PASS and ADI.  Mr. Markhoff stated that the Vizer companies would be less expensive than ADI because, based on what Mr. Markhoff said was his extensive review of ADI's confidential financial and operational records, Mr. Markhoff concluded that ADI did not know how to control costs.

On March 2, 2015, PASS purported to terminate its contract with ADI.  Subsequently, PASS and Via Airlines announced that they had expanded their partnership and that, as a result of this expanded partnership and other business ventures, Via Airlines had added "nine new ERJ-145 planes.

On May 28, 2015, Andre d'op Hof, Vice President, Sales & Business Development, for Embraer Aircraft Customer Services, Inc., wrote to Mr. Richardson of ADI stating that Embraer was engaged in negotiations with "Steven Markhoff from Caesars Entertainment" whom Mr. Hof stated might soon operate a number of Embraer regional jets into Las Vegas.  Mr. Hof wrote that, "much to our surprise and displeasure, we are let [sic] to believe that they have access to a copy of the Embraer - ADI exchange Pool agreement. This could never be such, as our non-disclosure agreement would not allow ADI to release such document or disclose its content to a 3rd party."  Mr. Markhoff was only able to obtain ADI's Embraer Pool Parts Agreement though the Caesars NDA and the IMS NDA.

Caesars (and the other Defendants) contend that ADI would not have been awarded the charter contract due to Caesars "suitability" determination.  But this purported determination was flawed and a pretext for depriving ADI of the Caesars contract, steering it to Via, and excusing the blatant violation of the Casers NDA.  The termination notice Mr. Markhoff sent to ADI on Caesars' behalf of February 16, 2016 made no mention of "suitability," but instead stated that Caesars would "entertain discussions" with ADI for a future proposal.

[Due to Caesars objections to the content of this paragraph it has been omitted from this order but will be subsequently filed under seal]

ADI reserves the right to introduce additional facts in response to defenses raised by Defendants.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

### B.    Caesars' Statement of Facts

To the extent that Caesars' Statement of Issues of Law contain issues of fact, those issues are incorporated by reference. Should the Court determine that any issue identified in this list as an issue of fact is more properly an issue of law, Caesars incorporates such issues by reference into its Statement of Issues of Law. Caesars reserves its right to modify the below list as necessary or appropriate as the case proceeds, including without limitation, based upon the Court's disposition of any motions in limine.

1.    Scott Beale became CEO and chairman of Aerodynamics on or about August 25, 2011.

2.    On February 1, 2013, Flight Test Aviation, Inc. commenced a lawsuit against Scott Beale in United States District Court for the Eastern District of Virginia claiming security violations and fraud.

3    On July 15, 2014, the jury in the Flight Test Aviation lawsuit rendered a verdict against Scott Beale finding him liable for fraud and awarded FTA $500,000, in compensatory damages and $100,000 in punitive damages.

4.    On October 24, 2014, the United States District Court for the Eastern District of Virginia upheld the jury award.

5.    In October 2014, Caesars issued a Request for Proposal (the "RFP") requesting bids for the provision of "Air Chartering services to bring patrons to/from properties across the U.S."

7.    Caesars sought a vendor for its small air charter program.

8.    Caesars and Aerodynamics entered a Non-Disclosure Agreement with an effective date of October 2, 2014 (the "Caesars NDA").

9.    The Caesars NDA was executed by Scott Beale, on behalf of Aerodynamics, and by Markhoff, on behalf of Caesars.

10.    After executing the Caesars NDA, Mr. Markhoff and Mr. Beale began negotiating a potential master air charter agreement under which Aerodynamics would provide charter services for Caesars' small plane charter program.

11.     Caesars and Aerodynamics never agreed upon a contract for air charter services.

12.     Caesars and Aerodynamics never signed a contract for air charter services.

13.     Caesars never approved a contract for air charter services with Aerodynamics.

14.     Caesars and its affiliates are gaming licensees in Nevada and other jurisdictions.

15.     Due to its status as a gaming licensee, Caesars is required to avoid associations with persons considered unsuitable so as to avoid jeopardizing its existing and prospective gaming licenses.

16.     Caesars cannot do business with vendors unable to pass a suitability investigation and/or unable or unwilling to comply with the established standards and principles.

17.     Aerodynamics was required to go through a suitability investigation.

18.     As part of the investigation, Aerodynamics had to complete a Caesars Business Information Sheet/Confidential Questionnaire (the "Questionnaire") providing information required for the investigation.

19.     Aerodynamics completed the Questionnaire and sent it back to Caesars on or around December 24, 2014.

20.     During the course of the investigation, Caesars discovered that Mr. Beale, ADI's then-owner and CEO, was found liable for fraud, a fact Mr. Beale failed to disclose and kept secret from Caesars.

21.     As a result, Caesars determined that Aerodynamics was unsuitable to conduct business with Caesars and Caesars therefore could not enter into an agreement with ADI.

22.     On January 22, 2015, the Department of Transportation Issued an Order to Show Cause against Aerodynamics proposing to "(1) deny the application filed by Aerodynamics . . . for a certificate of public convenience and necessity to engage in interstate scheduled air transportation of persons, property, and mail, and (2) revoke its certificates to conduct interstate and foreign charter air transportation of persons, property, and mail."

23.     The DOT determined that ADI did "not possess the managerial competence necessary to oversee its current charter and proposed scheduled passenger operations, nor does it

have the proper compliance disposition and regard for the laws and regulations governing its services."

24.     The DOT "learned from media reports that the case between FTA and Mr. Beale had gone to a jury trial on July 14-15, 2014, and Mr. Beale was found to have committed fraud." "Exacerbating this issue is the fact that [ADI] failed to notify the Department regarding the outcome of this civil matter as required by 14 CFR § 204.3 (I) and (p) at any point during the pendency of its application."

25.     As a result of the DOT's Order to Show Cause, Mr. Beale was required, among other things, to remove himself from the company.

26.     The DOT requirements, while binding on ADI, were not a cure to the Caesars finding of unsuitability and had no curing effect on Aerodynamics' disqualification from conducting business with Caesars.

27.     Mr. Beale continued to be involved with Aerodynamics despite the DOT's order.

28.     The DOT Order to Show Cause and the fraud judgment, among other things, made it impossible for a relationship between Caesars and Aerodynamics to proceed.

29.     The DOT Order to Show Cause had a significant impact on Aerodynamics' business.

30.     Following Caesars' rejection of Aerodynamics as a potential vendor, Mr. Markhoff pursued a personal ownership interest in ADI

31.     Shortly after Mr. Beale informed Mr. Markhoff of the Order to Show Cause, Mr. Markhoff informed Mr. Beale that he was interested in purchasing ADI on his own because Caesars would not be able to contract with ADI while Beale was still involved.

32.     Mr. Markhoff was looking to purchase ADI in his individual capacity separate from Caesars.

33.     On February 7, 2015, Mr. Markhoff, on behalf of his personal company IMS, entered into a letter of intent with ADI's parent company, ADI Holdings, to purchase Aerodynamics (the "IMS LOI").

34.     Caesars looked for other options to service its small charter program.

35.     Caesars and Via Airlines executed an agreement whereby Via would provide the services to Caesars.

36.     Shortly after its execution, Caesars terminated its contract with VIA.  Caesars thereafter used other commercially available options to service its clients travel needs.

37.     ADI Holdings sold its ownership interest in Aerodynamics to ADI Acquisition.

38.     ADI Acquisition sold its ownership interest in ADI to California Pacific Airlines.

**C.     Via Entities Statement of Facts.**

To the extent that the Via Defendants' Statement of Issues of Law contain issues of fact, those issues are incorporated by reference. Should the Court determine that any issue identified in this list as an issue of fact is more properly an issue of law, the Via Defendants incorporate such issues by reference into its Statement of Issues of Law. The Via Defendants reserve their right to modify the below list as necessary or appropriate as the case proceeds, including without limitation, based upon the Court's disposition of any motions in limine.

Additionally, the Via Defendants object to the Plaintiff's State of Facts to the extent the majority of the Statement is based on hearsay and other inadmissible, irrelevant, and unduly prejudicial information that is due to be precluded by this Court's ruling on the Defendants' Motions for Summary Judgement.

1.     On October 1, 2014, Steven Markhoff, then the Vice President of Travel Management for Caesars, solicited Aerodynamics to negotiate a Caesars' Master Air Transportation Charter Agreement (the "Charter Agreement") to provide charter jet service for Caesars' patrons to and from Caesars' properties across the United States.

2.     The Plaintiffs negotiated with Caesars from October 2014 through January 2015, knew and understood that a written, signed contract was required, yet acknowledge that ultimately ADI and Caesars did not enter into the Caesars' Charter Agreement.

3.     While the Plaintiffs were negotiating with Caesars, Aerodynamics applied to the United States Department of Transportation ("DOT") for a certificate of public convenience and necessity to allow Aerodynamics to operate interstate scheduled air transportation. As part of its application process, the DOT found that Aerodynamics failed to timely disclose that a jury

awarded $500,000.00 in compensatory damages and $100,000.00 in punitive damages against Aerodynamics' CEO, Scott Beale ("Beale"), in a separate fraud lawsuit (Case: *Flight Test Aviation, Inc. v. Scott A. Beale*; Case No.: Case No.: 1:13-cv-145) (the "Fraud Case").

4.      The DOT's Order to Show Cause, dated January 22, 2015, proposed to revoke Aerodynamics' flight certificates for interstate and foreign air charter transportation and found Beale to be unfit to run the airline.

5.      The DOT mandated that Beale step down and "no longer hold the titles and roles and responsibilities" and mandated that he sell his interest in the company.  These findings stemmed from the Orders entered in the Fraud Case.

6.      Beale stepped down as the CEO, President, and Chairman of the Board on January 26, 2015; however, he remained Aerodynamics' owner until July 2015.

7.      As a Nevada gaming licensee, Caesars can only contract with vendors that meet its strict due diligence criteria.

8.      By late January 2015, Caesars reviewed Aerodynamics for suitability, studied the Order to Show Cause, uncovered Beale's past, and determined that Aerodynamics was not a suitable vendor.  Based on this, Caesars could not contract with Aerodynamics.

9.      Caesars made this decision by January 28, 2015.

10.      *After* making this determination, Caesars *then* contacted Via Airlines, Inc. ("Via Airlines") as an alternate vendor for the services.

11.      After soliciting Via Airlines, Caesars and Via Airlines entered into a charter agreement in April 2015.

12.      At all times, Amos Vizer conducted all relevant business dealings through Via Airlines, Inc. and never personally.

13.      Via Air, LLC is Via Airlines, Inc.'s parent company.  It does not conduct any charter air services, it was uninvolved in the Caesars' contract negotiations and is not in the same line of business as Aerodynamics Incorporated nor Via Airlines, Inc.

14.      The Plaintiffs disclosed Samuel Engel ("Engel") as their expert witness.  Throughout discovery, they deferred to him for "all damage calculations." In his report,

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

Engel limits his opinions, stating that the Plaintiffs suffered damages for lost profits that they *would* have earned *had* Caesars awarded them the Charter Agreement.  These are the **only** damages that Engel analyzed and opined on. He did not opine on any damages suffered by the Plaintiffs because of any purported unjust enrichment to the Defendants, Via Airlines, Inc., Via Air, LLC, or Amos Vizer (the "Via Defendants").

15.    Aerodynamics Incorporated has never set forth any damage calculations, basis, or any other indication or justification supporting its claim that the Via Defendants were "unjustly enriched."[2]

**D.    The Markhoff Parties' Issues of Fact**

To the extent any of the Markhoff Parties' Statement of Facts contains issues of law, as determined by the Court, those issues are incorporated by reference. The Markhoff Parties reserve the right to modify the below list as the case proceeds, including as based upon the Court's disposition of any motions in limine.

1.    Scott Beale became CEO and chairman of ADI on or about August 25, 2011.

2.    ADI was and had been owned by ADI Holdings during the time period relevant to Plaintiffs' causes of action.

3.    Beale was the only owner of ADI Holdings during the time period relevant to the causes of action.

4.    In January 2013, ADI filed for Chapter 11 Bankruptcy.

5.    On February 1, 2013, Flight Test Aviation, Inc. commenced a lawsuit against Scott Beale in United States District Court for the Eastern District of Virginia claiming security violations and fraud.

6.    On July 15, 2014, the jury in the Flight Test Aviation lawsuit rendered a verdict against Scott Beale finding him liable for fraud and awarded FTA $500,000, in compensatory damages and $100,000 in punitive damages.

---

[2] Fed. R. Civ. P. 26(a)(2)(B) (An expert witness report **must** contain, *inter alia,* "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them…") (emphasis added).

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

7.      On October 24, 2014, the United States District Court for the Eastern District of Virginia upheld the jury award.

8.      In October 2014, Caesars issued a Request for Proposal to operate the Charter.

9.      Caesars and ADI entered a Non-Disclosure Agreement with an effective date of October 2, 2014.

10.     ADI submitted its completed Business Information Form dated December 24, 2014, to Caesars.

11.     On November 5, 2014, Mr. Markhoff sent ADI a preliminary overview of proposed terms for a Charter Agreement.

12.     On January 21, 2015, Mr. Markhoff sent a revised Charter Agreement to ADI with changes to the insurance limit requirements.

13.     The DOT issued an Order to Show Cause to ADI on Jan. 22, 2015.

14.     Caesars and ADI never signed a contract for the Caesars Charter.

15.     By January 26, 2015, Darrell Richardson took the titles of CEO, President, and Chairman of the Board of ADI.

16.     Darrell Richardson was not an officer, director, or agent of ADI Holdings.

17.     IMS issued an executed Letter of Intent to ADI on February 7, 2015.

18.     IMS and ADI executed a Non-Disclosure Agreement on February 11, 2015.

19.     IMS terminated its due diligence with ADI on February 13, 2015.

20.     Caesars terminated pursuing a contract with ADI on February 16, 2015.

21.     On May 6, 2015, ADI Holdings sold its ownership interest in ADI to ADI Acquisition, Co., LLC.

22.     ADI Acquisition sold its ownership interest in ADI to California Pacific Airlines.

23.     PASS Charters eventually terminated its contract with ADI.

24.     Embraer entered the Parts Pool Agreement with ADI in October 2014.

25.     Embraer terminated its Parts Pool Agreement with ADI in July 2015.

26.     ADI returned the planes it leased from Republic to operate the Caesars Charter to Republic without the assessment of penalties.

27.     Republic terminated due diligence efforts to acquire ADI after IMS terminated its due diligence.

28.     Whether ADI was financially stable.

29.     Whether ADI complied with the OSC.

30.     Whether Via operated the Caesars Charter at a profit.

31.     Whether Via used any confidential information from ADI.

32.     Whether information to operate the Caesars Charter was/is generally known.

33.     Whether information to operate the Caesars Charter was/is available through other sources.

34.     Whether information to operate the Caesars Charter was/is known by third parties.

35.      Whether sufficient information to operate the Caesars Charter was already known by the Markhoff Parties through Caesars history of operations.

36.     Whether sufficient information to operate the Caesars Charter was known by third parties.

37.     Whether the terms of ADI's contracts with vendors were known by third parties.

38.     Whether third parties disclosed ADI's alleged confidential information.

39.     Whether the other parties to ADI's contracts disclosed any alleged confidential information.

40.     What, if any, measures ADI took to guard the secrecy of any alleged confidential information.

41.     Whether any alleged actions by Mr. Markhoff were intentional.

42.     Whether any alleged actions by IMS were intentional

43.     Whether any alleged actions by Via were intentional.

44.     Whether any alleged actions by Caesars were intentional.

45.     Whether any actions by Mr. Markhoff were taken with reason to believe they would cause injury to ADI.

46.     Whether any actions by IMS were taken with reason to believe they would cause injury to ADI.

47.     Whether any actions by Via were taken with reason to believe they would cause injury to ADI.

48.     Whether any actions by Caesars were taken with reason to believe they would cause injury to ADI.

49.     Whether any information was allegedly exploited for Mr. Markhoff's own use.

50.     Whether any information was allegedly exploited for IMS's own use

51.     Whether any information was allegedly exploited for Via's own use.

52.     Whether any information was allegedly exploited for Caesars' own use.

53.      Whether any information was allegedly exploited for Mr. Markhoff's gain.

54.     Whether any information was allegedly exploited for IMS's gain.

55.     Whether any information was allegedly exploited for Via's gain.

56.     Whether any information was allegedly exploited for Caesars' gain.

57.     Whether ADI guarded the secrecy of any allegedly valuable information.

58.     Whether Mr. Markhoff had a duty not to disclose the allegedly protected information to associates, consultants, affiliates, representatives, appointees, and assigns.

59.     Whether IMS had a duty not to disclose the allegedly protected information to associates, consultants, affiliates, representatives, appointees, and assigns.

60.     Whether Via had a duty not to disclose the allegedly protected information to associates, consultants, affiliates, representatives, appointees, and assigns.

61.     Whether any alleged misappropriation by Mr. Markhoff violated an express or implied contract not to disclose.

62.     Whether any alleged misappropriation by IMS violated an express or implied contract not to disclose.

63.     Whether any alleged misappropriation by Via violated an express or implied contract not to disclose.

64.     Whether any alleged misappropriation by Caesars violated an express or implied contract not to disclose.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

65.     Whether any alleged misappropriation by Mr. Markhoff was willful, wanton, or with reckless disregard of plaintiffs' rights.

66.     Whether any alleged misappropriation by IMS was willful, wanton, or with reckless disregard of plaintiffs' rights.

67.     Whether any alleged misappropriation by Via was willful, wanton, or with reckless disregard of plaintiffs' rights.

68.     Whether any alleged misappropriation by Caesars was willful, wanton, or with reckless disregard of plaintiffs' rights.

69.     Whether any alleged misappropriation by Mr. Markhoff caused Caesars to not enter the Charter Agreement with ADI.

70.     Whether any alleged misappropriation by IMS caused Caesars to not enter the Charter Agreement with ADI.

71.     Whether any alleged misappropriation by Via caused Caesars to not enter the Charter Agreement with ADI.

72.     Whether any alleged misappropriation by Caesars caused Caesars to not enter the Charter Agreement with ADI.

73.     Whether ADI's projected profit from operating the Caesars Charter is accurate.

74.     Whether ADI Holdings was a party to the IMS LOI.

75.     Whether ADI Holdings was a party to the IMS NDA.

76.     Whether ADI Holdings possessed any interest in the alleged trade secrets.

77.     Whether ADI Holdings suffered any harm as a result of any of the alleged actions by Mr. Markhoff.

78.     Whether ADI Holdings suffered any harm as a result of any of the alleged actions by IMS.

79.     Whether ADI Holdings suffered any harm as a result of any of the alleged actions by Via.

80.     Whether any alleged violation of the IMS LOI caused Caesars to not enter a contract with ADI.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

81.   Whether any alleged violation of the IMS NDA caused Caesars to not enter the Charter Agreement with ADI.

82.   Whether Mr. Markhoff could foresee that any alleged violation of the IMS LOI would cause Caesars to not enter the Charter Agreement with ADI.

83.   Whether IMS could foresee that any alleged violation of the IMS LOI would cause Caesars to not enter the Charter Agreement with ADI.

84.   Whether Mr. Markhoff could foresee that any alleged violation of the IMS NDA would cause Caesars to not enter the Charter Agreement with ADI.

85.   Whether IMS could foresee that any alleged violation of the IMS NDA would cause Caesars to not enter the Charter Agreement with ADI.

86.   What was the spirit of the IMS LOI?

87.   What was the spirit of the IMS NDA?

88.   What was a justifiable expectation of benefit to ADI from the IMS LOI that is consistent with its spirit?

89.   What was a justifiable expectation of benefit to ADI from the IMS NDA that is consistent with its spirit?

90.   Whether Mr. Markhoff's alleged actions were deliberate.

91.   Whether IMS's alleged actions were deliberate.

92.   Whether Mr. Markhoff's alleged actions were faithful to the spirit of the IMS LOI.

93.   Whether IMS's alleged actions were faithful to the spirit of the IMS LOI.

94.   Whether Mr. Markhoff's alleged actions were faithful to the spirit of the IMS NDA.

95.   Whether IMS's alleged actions were faithful to the spirit of the IMS NDA.

96.   Whether Mr. Markhoff's alleged actions under the IMS LOI caused Caesars to not enter the Charter Agreement with ADI.

97.   Whether IMS's alleged actions under the IMS LOI caused Caesars to not enter the Charter Agreement with ADI.

98.    Whether Mr. Markhoff's alleged actions under the IMS NDA caused Caesars to not enter the Charter Agreement with ADI.

99.    Whether IMS's alleged actions under the IMS NDA caused Caesars to not enter the Charter Agreement with ADI.

100.    Whether Caesars determined ADI unsuitable to be a vendor.

101.    Whether Mr. Markhoff had the personal experience to operate the Caesars Charter without information from ADI.

102.    Whether Via had the experience to operate the Caesars Charter without information from ADI.

103.    Whether the information ADI allegedly shared would be helpful to operate the Caesars Charter.

104.    Whether ADI developed the information allegedly shared with Caesars.

105.    Whether ADI developed the information allegedly shared with Mr. Markhoff.

106.    Whether ADI developed the information allegedly shared with IMS.

107.    Whether the information allegedly shared by ADI derives independent economic value

## VI.    ISSUES OF LAW

The following are the issues of law to be to be tried and determined at trial.[3]

### A.    ADI's Issues of Law

1.    Did Defendants misappropriate trade secret and other confidential information of Aerodynamics, as described above, in violation of Nevada Law to Aerodynamics' damage.

2.    Did Caesars and Mr. Markhoff breach the Caesars NDA to Aerodynamics' damage.

3.    Did IMS and Mr. Markhoff breach the IMS NDA to ADI's damage.

4.    Did Caesars or Mr. Markhoff breach the implied covenant of good faith and fair dealing with respect to the Caesars NDA to Aerodynamics' damage.

___
[3] Should the attorneys or parties be unable to agree on the statement of issues of law, the joint pretrial order should include separate statements of issues of law to be tried and determined upon trial.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

5.      Did IMS or Mr. Markhoff breach the implied covenant of good faith and fair dealing with respect to the IMS NDA to ADI's damage.

**B.    Caesars' Issues of Law**

To the extent that Caesars' Statement of Facts contain issues of laws, those issues are incorporated by reference. Should the Court determine that any issue identified in this list as an issue of law is more properly an issue of fact, Caesars incorporates such issues by reference into its Statement of Issues of Fact. Caesars reserves its right to modify the below list as necessary or appropriate as the case proceeds, including without limitation, based upon the Court's disposition of any motions in limine

1.      Whether Aerodynamics has standing to maintain this lawsuit.

2.      Whether the information Aerodynamics shared with Caesars is considered a trade secret.

3.      Whether the information shared by Aerodynamics was all or substantially all publicly available.

4.      Whether Aerodynamics created and/or owned the information Aerodynamics shared with Caesars.

5.      Whether Aerodynamics failed to maintain the information it shared as confidential.

6.      Whether the information shared by Aerodynamics was used by Caesars.

7.      Whether Aerodynamics disqualified itself from any participation in Caesars contracts due to its fraudulent behavior before execution of the Caesars NDA.

8.      Whether Aerodynamics disqualified itself from any participation in Caesars contracts due to its fraudulent behavior after execution of the Caesars NDA.

9.      Whether Aerodynamics complied with the DOT's Order to Show Cause.

10.     Whether Caesars misappropriated Aerodynamics' trade secrets and other confidential information of Aerodynamics in violation of Nevada Law resulting in damages to Aerodynamics.

11.     Whether any alleged misappropriation was willful.

12.     Whether any alleged misappropriation was wanton.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

13.     Whether any alleged misappropriation was made with reckless disregard of Aerodynamics' rights.

14.     Whether ADI is entitled to compensatory damages.

15.     Whether ADI is entitled to punitive damages.

16.     Whether Caesars breached the Caesars NDA resulting in damages to Aerodynamics.

17.     Whether Aerodynamics damages, if any, were caused by Caesars.

18.     Whether Caesars breached the implied covenant of good faith and fair dealing with respect to the Caesars NDA resulting in damage to Aerodynamics.

19.     Whether Markhoff was acting outside of his capacity as a Caesars employee.

**C.     The Via Entities Issues of Law**

1.     Has Aerodynamics Incorporated presented any identifiable "trade secret(s)" that are subject to protection under NRS 600A.010 that are part of the claims in this matter?

2.     Were the Via Defendants covered as "investors" (or otherwise) under the non-disclosure agreement executed between Aerodynamics Incorporated and International Management Solutions, LLC?

3.     Did any of the Via Defendants acquire Aerodynamics Incorporated's trade secret(s) by "improper means?"

4.     Did any of the Via Defendants misappropriate Aerodynamics Incorporated's trade secret(s), and if so, which one(s)?

5.     Did Aerodynamics Incorporated use reasonable efforts under the circumstances to maintain its trade secret(s)' secrecy?

6.     Did the Via Defendants not use or otherwise rely on any Aerodynamics Incorporated information in obtaining, negotiating, or performing under the Caesars' charter agreement?

7.     Did any of the Via Defendants know (or have reason to know) that Steven Markhoff or Caesars misappropriated or acquired Aerodynamics Incorporated's trade secret(s) through improper means?

8.      Did any of the Via Defendants use Aerodynamics Incorporated's trade secret information?

9.      Did any of the Via Defendants *cause* Aerodynamics Incorporated's damages?

10.     Did any of the Via Defendants innocently acquire Aerodynamics Incorporated's trade secret information or was it done willfully or maliciously?

11.     Are any of the Via Defendants liable to Aerodynamics Incorporated?

12.     Can Aerodynamics Incorporated recover unjust enrichment damages from the Via Defendants when it failed to disclose or otherwise provide any basis for such a claim?

13.     What is the proper measure of unjust enrichment damages?

14.     Can unjust enrichment damages be awarded when the only evidence of "unjust enrichment" damages is an advanced loan?

15.     Is personal liability for Amos Vizer appropriate when all actions were conducted in good faith through and on behalf of a corporate entity?

16.     Can Via Air, LLC be held liable when it is not an Aerodynamics Incorporated competitor, did not obtain or otherwise use Aerodynamics Incorporated's information, and was wholly uninvolved with the Caesars' charter agreement?

**D.      The Markhoff Parties' Issues of Law.**

To the extent any of the Markhoff Parties' Statement of Law contains issues of fact, as determined by the Court, those issues are incorporated by reference. The Markhoff Parties reserve the right to modify the below list as the case proceeds, including as based upon the Court's disposition of any motions in limine.

1.      Whether the information ADI shared with Caesars is considered a trade secret.

2.      Whether the information ADI shared with Mr. Markhoff is considered a trade secret.

3.      Whether the information ADI shared with IMS is considered a trade secret.

4.      Whether ADI guarded the secrecy of the information and took adequate measures to maintain that it was not readily available to others.

5.      Whether any harmful action, if any, was intentional.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

6.      Whether any harmful action, if any, was taken with reason to believe it would harm ADI.

7.      Whether any harmful action, if any, was taken with reason to believe it would harm ADI Holdings.

8.      Whether any alleged misappropriation was wrongful.

9.      Whether any alleged misappropriation was a breach of an express or implied contract.

10.     Whether any alleged misappropriation was a breach of an express or implied duty not to disclose the information.

11.     Whether any alleged misappropriation was willful.

12.     Whether any alleged misappropriation was wanton.

13.     Whether any alleged misappropriation was made with reckless disregard of ADI's rights.

14.     Whether any alleged misappropriation caused Caesars to not enter the Caesars Charter Agreement.

15.     Whether any alleged misappropriation caused Caesars to unjustly enrich Via.

16.     Whether any alleged harm to ADI from any alleged misappropriation includes not contracting with Caesars for the Caesars Charter.

17.     Whether Via was unjustly enriched by any alleged misappropriation.

18.     Whether ADI had any right to expect to enter the Caesars Charter.

19.     Whether ADI had any right to expect the benefit of the Caesars Charter.

20.     Whether ADI's projected profit is accurate.

21.     Whether ADI's alleged damages are speculative.

22.     Whether ADI has standing to maintain this lawsuit.

23.     Whether ADI Holdings has standing to maintain this lawsuit.

24.     Whether ADI is entitled to compensatory damages.

25.     Whether ADI Holdings is entitled to compensatory damages.

26.     Whether ADI is entitled to punitive damages.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

27. Whether ADI Holdings is entitled to punitive damages.

28. Whether a contract for the Caesars Charter between ADI and Caesars had been formed.

29. Whether a contract for the Caesars Charter between ADI Holdings and Caesars had been formed.

30. Whether Mr. Markhoff was allowed to share information pursuant to the IMS LOI.

31. Whether IMS was allowed to share information pursuant to the IMS LOI.

32. Whether Via was allowed to share information pursuant to the IMS LOI.

33. Whether Mr. Markhoff was allowed to share information pursuant to the IMS NDA.

34. Whether IMS was allowed to share information pursuant to the IMS NDA.

35. Whether Via was allowed to share information pursuant to the IMS NDA.

36. Whether any benefit was conferred upon another party by use of any alleged trade secrets.

37. Whether any other party appreciated a benefit from the use of any alleged trade secrets.

38. Whether any other party accepted and retained a benefit from the use of any alleged trade secrets.

39. Whether it was inequitable for another party to retain an alleged benefit from the use of alleged trade secrets without the payment of value for the same.

40. Whether the Caesars NDA was a valid contract.

41. Whether the Caesars NDA was a Nevada contract.

42. Whether there was a proper offer to support the Caesars NDA.

43. Whether there was proper acceptance of an offer to support the Caesars NDA.

44. Whether there was adequate consideration to support the Caesars NDA.

45. Whether Caesars failed to render performance of the Caesars NDA when it became due.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

46.     Whether Mr. Markhoff failed to render performance of the Caesars NDA when it became due.

47.     Whether any alleged failure of performance by Caesars was excused.

48.     Whether any alleged failure of performance by Mr. Markhoff was excused.

49.     Whether all conditions precedent to Caesars' performance of the Caesars NDA were satisfied by ADI.

50.     Whether all conditions precedent to Mr. Markhoff's performance of the Caesars NDA were satisfied by ADI

51.     Whether ADI suffered any damage related to the alleged breach of the Caesars NDA.

52.     Whether any alleged harm to ADI as a result of the alleged breach of the Caesars NDA was foreseeable.

53.     Whether there was a proper offer to support  the IMS LOI.

54.     Whether there was proper acceptance of an offer to support the IMS LOI.

55.     Whether there was adequate consideration to support the IMS LOI.

56.     Whether Mr. Markhoff failed to render performance of the IMS LOI when it became due.

57.     Whether IMS failed to render performance of the IMS LOI when it became due.

58.     Whether any alleged failure of performance by the Markhoff Parties was excused.

59.     Whether all conditions precedent to Mr. Markhoff's performance of the IMS LOI were satisfied by ADI.

60.     Whether all conditions precedent to IMS's performance of the IMS LOI were satisfied by ADI.

61.     Whether all conditions precedent to Mr. Markhoff's performance of the IMS LOI were satisfied by ADI Holdings.

62.     Whether all conditions precedent to IMS's performance of the IMS LOI were satisfied by ADI Holdings.

63.     Whether ADI suffered any damage related to the alleged breach of the IMS LOI.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

64.     Whether ADI Holdings suffered any damage related to the alleged breach of the IMS LOI.

65.     Whether any alleged harm to ADI as a result of the alleged breach of the IMS LOI was foreseeable.

66.     Whether any alleged harm to ADI Holdings as a result of the alleged breach of the IMS LOI was foreseeable.

67.     Whether there was a proper offer to support the IMS NDA.

68.     Whether there was proper acceptance of an offer to support the IMS NDA.

69.     Whether there was adequate consideration to support the IMS NDA.

70.     Whether Mr. Markhoff failed to render performance of the IMS NDA when it became due.

71.     Whether IMS failed to render performance of the IMS NDA when it became due.

72.     Whether any alleged failure of performance of Mr. Markhoff was excused.

73.     Whether any alleged failure of performance of IMS was excused.

74.     Whether all conditions precedent to Mr. Markhoff's performance of the IMS NDA were satisfied by ADI.

75.     Whether all conditions precedent to IMS's performance of the IMS NDA were satisfied by ADI.

76.     Whether all conditions precedent to Mr. Markhoff's performance of the IMS NDA were satisfied by ADI Holdings.

77.     Whether all conditions precedent to IMS's performance of the IMS NDA were satisfied by ADI Holdings.

78.     Whether ADI suffered any damage related to the alleged breach of the IMS NDA.

79.     Whether ADI Holdings suffered any damage related to the alleged breach of the IMS NDA.

80.     Whether any harm to ADI as a result of the alleged breach of the IMS was foreseeable.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

81.     Whether any harm to ADI Holdings as a result of the alleged breach of the IMS was foreseeable.

82.     Whether the alleged benefits ADI expected were justifiable and consistent with the spirit of the Caesars NDA.

83.     Whether Caesars performed the Caesars NDA in a manner that was in violation of or unfaithful to its spirit.

84.     Whether Mr. Markhoff performed the Caesars NDA in a manner that was in violation of or unfaithful to its spirit.

85.     Whether the alleged unfaithful actions by Caesars were deliberate.

86.     Whether the alleged unfaithful actions by Mr. Markhoff were deliberate.

87.     Whether the alleged actions by Caesars caused Caesars to not enter the Caesars Charter with ADI.

88.     Whether the alleged actions by Mr. Markhoff caused Caesars to not enter the Caesars Charter with ADI.

89.     Whether the IMS LOI was a valid contract.

90.     Whether the IMS LOI was a Nevada contract.

91.     Whether the alleged benefits ADI expected were justifiable and consistent with the spirit of the IMS LOI.

92.     Whether the alleged benefits ADI Holdings expected were justifiable and consistent with the spirit of the IMS LOI.

93.     Whether Mr. Markhoff performed the IMS LOI in a manner that was in violation of or unfaithful to its spirit.

94.     Whether IMS performed the IMS LOI in a manner that was in violation of or unfaithful to its spirit.

95.     Whether the alleged actions by Mr. Markhoff were deliberate.

96.     Whether the alleged actions by IMS were deliberate.

97.     Whether the alleged actions by Mr. Markhoff caused Caesars to not enter the Caesars Charter with ADI.

98.     Whether the alleged actions by IMS caused Caesars to not enter the Caesars Charter with ADI.

99.     Whether the IMS NDA was a valid contract.

100.    Whether the IMS NDA was a Nevada contract.

101.    Whether the alleged benefits ADI expected were justifiable and consistent with the IMS NDA.

102.    Whether the alleged benefits ADI Holdings expected were justifiable and consistent with the IMS NDA.

103.    Whether Mr. Markhoff performed the IMS NDA in a manner that was in violation of or unfaithful to its spirit.

104.    Whether IMS performed the IMS NDA in a manner that was in violation of or unfaithful to its spirit.

105.    Whether the alleged actions by Mr. Markhoff caused Caesars to not enter the Caesars Charter with ADI.

106.    Whether the alleged actions by IMS caused Caesars to not enter the Caesars Charter with ADI.

## VII. <u>TRIAL EXHIBITS</u>

The Parties reserve their right to offer the following exhibits as evidence at trial:

(1)    Plaintiff's exhibits and objections to them are attached hereto as **Exhibit 1**.

(2)    Caesars' exhibits and objections to them are attached hereto as **Exhibit 2**.

(3)    The Markhoff Defendants' exhibits and objections to them are attached hereto as **Exhibit 3**.

(4)    The Via Entities' exhibits and objections to them are attached hereto as **Exhibit 4**.

(5)    The Parties stipulate and agree that supplemental disclosures of trial exhibits pursuant to Fed. R. Civ. P.  26(3)(B) may be made up to thirty (30) days before trial, with any objections due fourteen (14) days after they are made.

## VIII. DEPOSITION DESIGNATIONS/OBJECTIONS

    A.    **Deposition Designations**

        (1)    Plaintiffs reserve their right to offer the following depositions:

                a.    Depositions of Steven Markhoff taken December 9, 2019 and January 6, 2017 and Defendants' objections thereto, as set forth in **Exhibit 5**, attached hereto.

                b.    Deposition of Amos Vizer taken January 5, 2017 and Defendants' objections thereto, as set forth in **Exhibit 6**, attached hereto.

                c.    Deposition of Chris Beer taken April 13, 2017, as set forth in **Exhibit 7**, attached hereto. Plaintiffs have not provided Defendants with the page and line designations that they intend to designate from Mr. Beer's depositions.  All Defendants reserve all rights and objections to the designation of testimony of Mr. Beer.

        (2)    Caesars reserve its right to offer the deposition testimony set forth in the schedules attached collectively hereto as **Exhibit 8**. These schedules include Caesars' designations, any objections, and Caesars response(s) thereto (if any).

        (3)    The Markhoff Defendants reserve their right to offer the deposition testimony set forth in the schedules attached collectively hereto as **Exhibit 9**. These schedules include the Markhoff Defendants' designations, any objections, and the Markhoff Defendants' response(s) thereto (if any).

        (4)    The Via Entities reserve the right to offer the following depositions: Deposition of John Beardsley taken March 21, 2017; Deposition of Richard Casto taken April 12, 2017; Deposition of Thomas Jenkin taken April 11, 2017; Deposition of Emmanuel Lawrence taken December 6, 2016; Deposition of Matthew Levin taken December 20, 2016; Deposition of Darrell Richardson taken December 1, 2016; and Deposition of Blake Segal taken January 20, 2017, all as set forth in **Exhibit 10**, attached

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

1   hereto. The attached schedule includes the Via Entities' designations, any

2   objections, and the Via Entities' response(s) thereto (if any).

3   (5)   The Parties stipulate and agree that supplemental disclosures of deposition

4   designations pursuant to Fed. R. Civ. P.  26(3)(B) may be made up to thirty

5   (30) days before trial, with any objections due fourteen (14) days after they

6   are made.

7   (6)   The Parties further stipulate to (1) use deposition transcripts without regard

8   to page and line designations for impeachment and/or rebuttal of any

9   witnesses who appear live at trial; (2) use deposition transcripts as

10   permitted under Fed. R. Civ. P.  32; (3) offer any exhibits properly

11   identified by any other party to this action; and (4) object to the

12   identification of any witnesses who will appear live at trial once they are

13   disclosed.  Further, the Parties reserves their right to modify their

14   deposition designations and exhibit lists as the pre-trial order is finalized

15   and the parties exchange pre-trial disclosures before trial.

16   **B.**   **Objections to Deposition Designations:**

17   (1)   Plaintiff objects to defendant's deposition designations as follows:

18   a.   As to portions of Caesar's designations of the depositions of Scott

19   Beale, John Beardsley, Steven Markhoff, Darrel Richardson and

20   Amos Visor, as set forth in **Exhibit 11**, attached hereto;

21   b.   As to portions of Markhoff's designations of the depositions of

22   Chris Beer, Scott Beale, John Beardsley, Richard Casto, Tom

23   Jenkin, Matthew Levin, Darrell Richardson, Blake Segal, and Amos

24   Vizer, as set forth in **Exhibit 12**, attached hereto;

25   c.   As to portions of VIA's designations of the depositions of Chris

26   Beer, John Beardsley, Richard Casto, Tom Jenkin, Matthew Levin,

27   Darrell Richardson and Blake Segal, as set forth in **Exhibit 13**,

28   attached hereto.

        (2)     The Via Defendants object to Defendants' deposition designations as follows:

           (a) As to portions of Caesars' designations of the depositions of Scott Beale, John Beardsley, and Darrell Richardson, as set forth in **Exhibit 14**, attached hereto; and

           (b) As to portions of Steven Markhoff's designations of the depositions of Scott Beale, John Beardsley, Richard Casto, Thomas Jenkin, Emmanuel Lawrence, Matthew Levin, Darrell Richardson, and Blake Segal, as set forth in **Exhibit 15**, attached hereto.[4]

## IX. <u>MOTIONS IN LIMINE</u>

The Parties have not yet filed any motions in limine because the deadline to file such motions is 30 days before trial and the trial date has not yet set.

## X. <u>WITNESSES</u>

    1.  Plaintiff's list of witnesses is attached hereto as **Exhibit 16.**

    2.  Caesars' list of witnesses is attached hereto as **Exhibit 17.**

    3.  The Markhoff Defendants' list of witnesses is attached as **Exhibit 18.**

    4.  The Via Entities list of witness is attached as **Exhibit 19.**

The Parties reserve the right to examine any witness testifying for another party, including experts, and to present witnesses for purposes of impeachment

## XI. <u>TRIAL DATES</u>

The parties have conferred and jointly offer to commence trial on or after January 27, 2020.  It is expressly understood by the undersigned that the court will set the trial of this matter on one of the agreed-upon dates if possible; if not, the trial will be set at the convenience of the court's calendar.

---

[4] The Markhoff Defendants and Caesars' objections to deposition designations are contained in the Schedules attached hereto as Exhibits 5-6, 9 and 10.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

## XII. LENGTH OF TRIAL

It is estimated that the trial will take a total of 2 to 3 weeks.

**APPROVED AS TO FORM AND CONTENT:**

BUCHALTER, A Professional Corporation

PISANELLI BICE PLLC

By: _/s/ C. Dana Hobart_
C. Dana Hobart, Esq. (CA SBN: 125139)
(admitted *pro hac vice*)
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA   90017

HEJMANOWSKI & McCREA
Paul Hejmanowski, Esq. (NV SBN: 94)
Charles McCrea, Esq. (NV SBN: 104)
520 South Fourth Street, Suite 320
Las Vegas, NV 89101

*Attorneys for Plaintiffs*

By: _/s/ M. Magali Mercera_
James J. Pisanelli, Esq. (NV SBN: 4027)
Debra L. Spinelli, Esq. (NV SBN: 9695)
M. Magali Mercera, Esq. (NV SBN: 11742)
Emily A. Buchwald, Esq. (NV SBN: 13442)
400 South 7th Street, Suite 300
Las Vegas, NV 89101

*Attorneys for Caesars Entertainment Operating Company, Inc.*

BROWNSTEIN HYATT FARBER SCHRECK, LLP

BITMAN O'BRIEN & MORAT, PLLC

By: _/s/ Troy P. Domina_
Frank M. Flansburg III, Esq. (NV SBN: 6974)
Troy P. Domina, Esq. (NV SBN: 13862)
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

*Attorneys for Defendants Steven Markhoff and International Management Solutions LLC*

By: _/s/ Ronnie J. Bitman_
Ronnie J. Bitman, Esq. (FL SBN: 744891)
(admitted *pro hac vice*)
255 Primera Blvd., Suite 128
Lake Mary, FL   32746

KOLESAR & LEATHAM
Matthew T. Dushoff, Esq. (NV SBN: 4975)
400 S. Rampart Blvd., Suite 400
Las Vegas, Nevada  89145

*Attorneys for Defendants Via Airlines, Inc., Via Air, LLC, and Amos Vizer*

/ /

/ /

/ /

/ /

/ /

## XIII. <u>ACTION BY THE COURT</u>

      This case is set for court/jury trial on the fixed/stacked calendar on _____

_____. Calendar call will be held on _____

_____.

      This pretrial order has been approved by the parties to this action as evidenced by their

signatures or the signatures of their attorneys hereon, and the order is hereby entered and will

govern the trial of this case. This order may not be amended except by court order and based upon

the parties' agreement or to prevent manifest injustice.

DATED:_____.


                                           _____

                                         UNITED STATES DISTRICT JUDGE or
                                         UNITED STATES MAGISTRATE JUDGE

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES